IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KEVIN BRATTEN, SR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. SAG-09-cv-1821 |
| | * | |
| MICHAEL J. ASTRUE, | * | |
| Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

******

**MEMORANDUM**

Pending before this Court, by the parties' consent, are cross–motions for summary judgment concerning the Commissioner's decision denying Kevin Bratten's claims for Supplemental Security Income ("SSI") and Disability Insurance benefits ("DIB"). (ECF Nos. 5, 17, 20). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir.1996); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court DENIES the Commissioner's motion, DENIES Mr. Bratten's motion, VACATES the Commissioner's denial of benefits, and REMANDS this matter for further proceedings consistent with this opinion.

**I. BACKGROUND**

Kevin Bratten, Sr. ( "Mr. Bratten" or "Claimant"), applied for DIB and SSI on October 13, 2006, alleging that he has been disabled since November 4, 2004 due to spinal stenosis,[1] nerve damage, obesity, and loss of feeling in his back and legs. (Tr. 10, 140-42, 145-47, 173). His

---

[1] Spinal stenosis is narrowing of either the spinal cord that causes pressure on the spinal cord, or narrowing of the openings (called neural foramina) where spinal nerves leave the spinal column. It appears that Mr. Bratten suffers from the latter type of spinal stenosis.

1

claims were denied initially and upon reconsideration. (Tr. 77-79, 82-86). A hearing was held before the Honorable Melvin Benitz, Administrative Law Judge ("ALJ"), on January 30, 2009, where Mr. Bratten appeared with counsel and testified. (Tr. 411–35). The ALJ subsequently denied Mr. Bratten's claims in a decision dated February 26, 2009. (Tr. 7-23). The ALJ found that although Claimant's degenerative disc disease, peripheral neuropathy,[2] obstructive sleep apnea,[3] migraine headaches, left eye enucleation[4] and obesity were all "severe" impairments as defined in the Regulations, they did not meet or medically equal any of the listed impairments found in the Regulations. (Tr. 12-16). The ALJ also determined that Claimant retained the residual functional capacity to perform a limited range of light work.[5] (Tr. 16-21). The ALJ found that Claimant was not able to perform any of his past relevant work ("PRW"). (Tr. 22). After receiving testimony from a vocational expert ("VE") and considering his age, education, work experience, and residual functional capacity, the ALJ determined there were jobs that existed in the national and local economies in significant numbers which he could perform. Accordingly, the ALJ found Mr. Bratten was not disabled. (Tr. 22-23). On May 19, 2009, the Appeals Council denied Claimant's request for review, making his case ready for judicial review. (Tr. 1-4).

**II. STANDARD OF REVIEW**

The function of this Court is not to review Mr. Bratten's claim *de novo* or reweigh the evidence of record. *Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir.1986). Rather, this Court is

---

[2] Peripheral neuropathy is damage to the nerves of the peripheral nervous system, which transmits information from the brain and spinal cord to the rest of the body.
[3] Obstructive sleep apnea is a condition in which pauses in breathing occur during sleep because an airway has become narrowed, blocked, or floppy.
[4] Left eye enucleation is the removal of the left eye. Mr. Bratten's left eye was removed subsequent to a traumatic injury in 1990. (Tr. 55).
[5] The ALJ found that Mr. Bratten could perform "simple, unskilled, low stress, low concentration, low memory, sedentary or light work" that allowed a sit/stand option; avoided prolonged climbing, balancing and stooping actions; avoided heights and hazardous machinery, ropes, ladders, scaffolds, stairs, overhead reaching, temperature extremes and humidity; and did not require good visual acuity. (Tr. 16).

to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987); *see* 42 U.S.C. § 405(g) (2009).

Substantial evidence is more than a scintilla but less than a preponderance of the evidence presented. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1996). It is such relevant evidence as a reasonable mind might accept as adequate to support a verdict were the case before a jury. *Johnson v. Califano,* 434 F.Supp. 302, 307 (D.Md.1977). Usually, if substantial evidence supports the Commissioner's decision, the decision must be upheld. *Cook v. Heckler,* 783 F.2d 1168, 1172 (4th Cir.1986); *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir.1972); *see* 42 U.S.C. § 405(g).

In addition to reviewing the ALJ's decision to determine whether it is supported by substantial evidence, this Court also must determine whether the ALJ properly applied the law. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman,* 829 F.2d at 517. After reviewing the ALJ's decision, this Court may affirm, modify, or reverse the decision of the ALJ and may remand the case for a rehearing. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991); *Coffman,* 829 F.2d at 519; *Vietek v. Finch,* 438 F.2d 1157, 1158 (4th Cir.1971); *see* 42 U.S.C. § 405(g).

In determining whether a claimant is disabled within the meaning of DIB, the Commissioner has promulgated regulations that set forth the following five-step sequential evaluation procedure.

> (1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 *et seq*. If so, the claimant is not disabled.

(2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920. If not, the claimant is not disabled.

(3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, known as the Listing of Impairments. If so, the claimant is disabled.

(4) If not, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to do past relevant work ("PRW"). If so, the claimant is not disabled.

(5) If not, the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience. The Commissioner bears the burden of proof at step five. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995). If the claimant is not capable of other work, the claimant is disabled.

See 20 C.F.R. §§ 404.1520, 416.920 (2009); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

### III. ALJ'S DECISION

After reviewing the medical record and hearing testimony, the ALJ evaluated Mr. Bratten's claims using the Social Security Administration's five-step sequential process and made the following relevant findings:

1. The claimant has not engaged in substantial gainful activity since November 4, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease, peripheral neuropathy, migraine headaches, obstructive sleep apnea, status post left eye enucleation, and obesity (20 CFR 404.1521 *et seq.*, and 416.921 *et seq.*).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform simple, unskilled, low stress, low concentration, low memory, sedentary or light work as defined in 20 CFR 404.1567 (a and b) and 416.967(a and b) except that he could lift 20 pounds occasionally, 10 pounds frequently, stand or walk for 20 to 30 minutes, sit for 5 to 10 minutes, consistently on an alternate basis, 8 hours a day, 5 days a week, with

no prolonged climbing, balancing, and stooping, avoiding heights and hazardous machinery, ropes, ladders, scaffolds, stairs, overhead reaching, and temperature and humidity extremes, able to attend tasks and complete schedules, in a job that does not require good visual acuity.

5. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

6. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569a, 416.969, and 416.969a).

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 4, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-22).

### IV. SUMMARY OF EVIDENCE

At the time of his administrative hearing, Kevin L. Bratten, Sr. was forty-one years old, was 6'6" tall, and weighed approximately 517 pounds. (Tr. 32-33). Mr. Bratten has a twelfth-grade education and can read and write in English. (Tr. 35-36, 65). He alleged disability due to spinal stenosis, nerve damage, obesity, and loss of feeling in his back and legs (Tr. 10, 140-42, 145-47, 173).

Mr. Bratten visited the Peninsula Regional Medical Center in Salisbury, Maryland on May 25, 2004, complaining of radiating back pain due to an injury he received while working at a Pepsi-owned warehouse on May 24, 2004. (Tr. 235). Medical imaging conducted on June 2, 2004 revealed that Mr. Bratten had mild scoliosis of the thoracic spine, minimal degenerative changes to both the thoracic and lumbar spines, some minimal osteophyte formation on the lumbar spine, and otherwise normal spinal structure. (Tr. 249-50). Paula G. Rose, M.D., diagnosed Claimant with acute lumbosacral pain, prescribed frequent icings to the injury, as well as a course of muscle relaxant, anti-inflammatory, and pain medications. *Id*. Over the next two

months, Dr. Rose saw Mr. Bratten at least 6 more times. (Tr. 221-235). On July 26, 2004, Mr. Bratten stated that his lower back was "doing fine" and that he was "feeling much better." (Tr. 221).

From March 21, 2005 through at least 2009, Brent Fox, M.D., treated Mr. Bratten for chronic lower back pain and related leg pain. (Tr. 273-99, 523-31). Dr. Fox diagnosed Mr. Bratten with degenerative disc disease and stenosis of the lumbar spine. To manage his pain, Dr. Fox prescribed epidural steroid injections every few months and oral oxycodone on a daily basis. *Id*.

On May 23, 2006, orthopedist John J. Greco, M.D., examined Mr. Bratten and determined that his chronic low back was responding to therapy. (Tr. 262). Dr. Greco reported that the claimant "may need to change job positions and may need to have retraining for a different position," but that for the moment "we'll allow him to return to his normal job position using proper lifting techniques, etc." *Id*.

On September 19, 2006, Mr. Bratten had an MRI taken of his spine. (Tr. 252). John H. Rees, M.D., interpreted the results of the test and diagnosed Mr. Bratten with degenerative disc disease and spondylosis[6] of the lumbar spine, with moderate to severe foraminal narrowing located at the L2 and L3 vertebrae. (Tr. 252-53).

On November 7, 2006, Dr. Greco referred Mr. Bratten to a neurologist and limited the claimant from returning either to his previous job or to light duty. (Tr. 258). Dr. Greco's notes also reflect that Mr. Bratten's September 2006 MRI shows mild congenital stenosis and that recent EMG and nerve conduction studies "were suggestive of peripheral neuropathic type involvement." (Tr. 259).

---

[6] Spondylosis is a term that is often broadly used to encompass a variety of degenerative conditions affecting the disks, vertebral bodies, and/or associated joints of the lumbar spine.

On December 13, 2006, state agency medical consultant James Biddison, M.D., opined that Mr. Bratten suffers from lumbar arthritis and obesity but is able to do work with some exertional limitations. (Tr. 265-72). Mark Feld, M.D., another medical consultant for the state, agreed with Dr. Biddison's analysis on March 15, 2007. (Tr. 331). Because Dr. Feld's and Dr. Biddison's opinions were rendered in 2006 and 2007, they do not consider Dr. Fox's later analysis of Mr. Bratten's ability to work.

On May 22, 2008 and January 11, 2009, Mr. Bratten was admitted to Peninsula Regional Medical Center and treated for migraine headaches. On both occasions, he remained in the hospital for several days and was ultimately discharged upon recovery. (Tr. 332-50, 464-511).

On January 21, 2009, Dr. Fox, Claimant's pain physician, submitted a medical opinion regarding Mr. Bratten's ability to do work-related activities. Dr. Fox's opined that, among other things, Mr. Bratten can carry less than 10 pounds on either a regular or occasional basis; can stand and walk for less than two hours during an 8-hour work day; can sit for less than two hours during an 8-hour work day; needs to opportunity to shift at will from sitting or standing positions; needs to lie down several times during a work shift; cannot crawl, bend, lift, push, or pull; and cannot walk distances greater than 100 feet. (Tr. 524-25). Dr. Fox based his conclusions, at least in part, on the September 19, 2006 MRI that showed degenerative disc disease and spondylosis of the lumbar spine, with moderate to severe foraminal narrowing in two locations.

### V. ANALYSIS

Mr. Bratten's primary argument is that the ALJ improperly assessed his RFC at step four of the sequential evaluation process used to determine whether a claimant is disabled. Mr. Bratten argues that the ALJ erred in the following ways: (1) by failing to properly assess and discuss

relevant evidence in connection with the RFC finding; (2) by failing to assign proper weight to the opinions of the physicians who treated Mr. Bratten; and (3) by erroneously assessing Mr. Bratten's subjective complaints, particularly his complaints regarding pain in his back and legs.

### A. The ALJ Did Not Properly Discuss Why He Accorded Little Weight to the Treating Physicians' Opinions.

Mr. Bratten argues that the ALJ failed to give the proper weight to the opinions of Mr. Bratten's treating physicians. A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record. *See Craig v. Chater,* 76 F.3d 585 (4th Cir.1996); *see also* 20 CFR § 404.1527(d)(2). While treating source opinions on issues reserved to the Commissioner – such as determining a claimant's RFC – are not entitled to controlling weight, the ALJ still must evaluate all of the evidence in the case record to determine the extent to which the opinion is supported by the record. *Eichelberger v. Astrue*, 2009 WL 2602360 at *5 (D.MD. Aug. 21, 2009); Social Security Ruling 06-03p. Federal regulations require an ALJ to assess a number of factors when considering what weight to assign to the medical opinions presented. 20 CFR 404.1527(d). These factors include the examining relationship between the physician and the claimant; the treatment relationship between the physician and the claimant; the extent to which a medical opinion is supported by evidence; the consistency of a medical opinion with the record as a whole; and the specialization of the physician. 20 CFR 404.1527(d)(1)-(5).

The ALJ gave little weight to treating physician Dr. Fox's opinion because "the totality of the medical evidence shows that the claimant is not as limited as determined by Dr. Fox." (Tr. 21). The ALJ stated that Dr. Fox likely relied heavily on Mr. Bratten's subjective complaints when crafting his medical opinion. *Id.* The ALJ did not cite any evidence in the medical record that

supports this analysis of Dr. Fox's opinion.  The ALJ also assigned little weight to the opinions of treating physicians Drs. Rose and Greco, stating that nothing in the medical record indicated that either Dr. Rose or Dr. Greco intended to permanently limit Mr. Bratten's work-related activities. *Id.* The ALJ cited specific medical evidence that tended to contradict Dr. Greco's opinion.

The ALJ did not refer to any evidence that contradicted Dr. Fox's medical opinion and did not provide any facts in support of his assertion that Dr. Fox had relied primarily on Claimant's subjective complaints.  Such an assertion is purely speculative and is not an accurate characterization of the record.  Dr. Fox treated the Claimant for five years.  The record contains 30 pages of treatment notes from Dr. Fox, as well as MRI results upon which Dr. Fox specifically relied according to his medical opinion report. *See* Ex. 5F.  There is no evidence in the record to reasonably conclude that Dr. Fox was coerced by his patient or that Dr. Fox acted based on sympathy rather than his professional judgment when he evaluated Mr. Bratten's ability to work. *See Foxman v. Barnhart*, 157 Fed. Appx. 344, 347 (2d Cir. 2005).

Further, the ALJ did not address any of the factors listed in 20 CFR 404.1527(d) and did not explain why he assigned little weight to the opinion of treating physician Dr. Fox.  Without any specific citations to the ways in which Dr. Fox's opinion differs from other medical evidence or relies on Mr. Bratten's subjective complaints, the court cannot conclude that the ALJ's decision to accord the opinions of plaintiff's treating physicians less than controlling weight is supported by substantial evidence.  As a result, this Court must remand this case for further analysis.

### B. The ALJ Failed to Explain His Credibility Determination of Mr. Bratten's Pain Complaints.

Generally, "ALJs have a duty to explain their assertions and support them with evidence from the record." *Kotofski v. Astrue*, 2010 WL 3655541 at *5 (D.Md. Sept. 14, 2010) (citing

9

*Cook v. Heckler*, 783 F.2d 1168, 1174 (4th Cir. 1986)). The duty to explain also extends to explanations regarding a claimant's subjective pain complaints. *Kotofski*, 2010 WL 3655541 at *6. The Fourth Circuit has concluded that failure by the ALJ to explain a decision makes it "simply impossible to tell whether there was substantial evidence to support the determination." *Cook v. Heckler,* 783 F.2d 1168, 1173 (4th Cir.1986); *Hammond v. Heckler,* 765 F.2d 424, 426 (4th Cir.1985); *King v. Califano,* 615 F.2d 1018, 1020 (4th Cir.1980). If an ALJ fails to explain his findings, "to say that his decision is supported by substantial evidence approaches an abdication of the Court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Arnold v. Sec'y of Health, Educ. & Welfare,* 567 F.2d 258, 259 (4th Cir.1997).

Evaluating a claimant's credibility as it relates to his or her subjective complaints of pain is a two-step process. *Bullock v. Astrue*, 2010 WL 3060591 at *5 (D.Md. Aug. 3, 2010) (citing *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996)). "First, the ALJ must determine whether there is objective evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. Second, the ALJ must evaluate the intensity and persistence of the claimant's pain or other symptoms alleged based on all the evidence in the record, including the claimant's testimony." *Id*. The ALJ must also specifically refer to evidence informing his conclusion, including the reasons for rejecting evidence which contradicts his findings. *Bullock*, 2010 WL 3060591 at *6 (citing *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984)).

The record shows that Mr. Bratten suffers from radiating pain in his back and legs and that he has received treatment for this pain since at least 2005. The ALJ discussed in detail the medical

record that supports these findings; this discussion comports with the first step of the two-step test for evaluating subjective pain complaints. The ALJ's opinion further states that

> the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 19). This explanation does not clearly reflect how the ALJ evaluated Mr. Bratten's statements regarding his pain and other symptoms. Mr. Bratten's "symptoms" are not defined. The opinion does not demonstrate how the ALJ considered Mr. Bratten's statements in relation to the objective medical evidence. *See* 20 CFR § 404.1529(c)(3)-(4). Social Security regulations prohibit an ALJ from discrediting a claimant's statements regarding the intensity and persistence of pain solely because the available objective medical evidence does not substantiate the claimant's statements. 20 CFR § 404.1529(c)(2). In this case, where the September 2006 MRI and Claimant's ongoing pain treatments substantiate Mr. Bratten's claims of back and associated leg pain, the ALJ must explain why he discredited Mr. Bratten's statements.

Because the ALJ failed to explain how he evaluated Mr. Bratten's statements regarding his pain, the ALJ's analysis of Mr. Bratten's credibility fails to meet step two of the process for evaluating subjective pain complaints. The ALJ has not met his duty to explain and support his assertions with evidence from the record. Accordingly, this Court finds the ALJ's discussion lacking and remands this case for proper analysis.

### C. This Court Cannot Yet Determine Whether the ALJ Properly Assessed and Discussed Relevant Evidence in Connection with the RFC Finding.

Mr. Bratten argues that the ALJ failed to properly explain his decision through the required narrative discussion. Mr. Bratten also asserts that the ALJ failed to properly consider the

relevant evidence when assessing RFC. Specifically, Mr. Bratten argues that the ALJ's finding that Claimant has several severe impairments necessitates a ruling that he is disabled.

The Social Security Administration requires that the RFC assessment include a function-by-function assessment based on the claimant's functional limitations and ability to do work-related activities. Social Security Ruling 96-8p, 1996 WL 374184 at *3 (July 2, 1996). The RFC assessment must be based on all relevant evidence in the record and must address both the remaining exertional and non-exertional capacities of the individual. *Id.* at *3, *5-6. The ALJ's evaluation must also include a narrative discussion describing how medical and non-medical evidence support the ALJ's conclusion. *Fleming v. Barnhart*, 284 F.Supp.2d 256, 271 (D.Md. 2003).

Because Dr. Fox, Mr. Bratten's treating physician, found that Mr. Bratten has more limitations than the ALJ recognized, and because the ALJ has not adequately discussed Dr. Fox's opinion, it is impossible for this court to determine whether the ALJ accurately assessed Mr. Bratten's RFC.

## VI. Conclusion

Based on the foregoing, the Court DENIES Claimant's Motion, DENIES Defendant's Motion and REMANDS this matter to the Social Security Administration for further proceedings consistent with this opinion. A separate order follows.

Dated: <u>July 6, 2011</u>          <u>          /s/          </u>
                                   Stephanie A. Gallagher
                                   United States Magistrate Judge